PENGAD-Bayonne, N.J.

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) CRIMINAL NO.: 1:11cr50-06 (RWR) |
| v. | ) |
| | ) |
| JAVIER EDUARDO JUAN BALLESTAS, | ) |
| a/k/a "El Mono," | ) |
| | ) |
| Defendant. | ) |

## JOINT STATEMENT OF STIPULATED FACTS

1. The following statement of facts does not purport to include all of the Defendant's illegal conduct during the course of his charged offense. Nor does it purport to be an inclusive recitation of all that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or those of his conspirators. It represents sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea in the above-captioned matter. Had the Defendant proceeded to trial, the Defendant agrees that the Government's evidence would show the following beyond a reasonable doubt:

2. From in or about May 2008 and continuing thereafter up to and including February 23, 2011, within the country of Colombia, the Defendant, JAVIER EDUARDO JUAN BALLESTAS, a/k/a "El Mono," did unlawfully, knowingly, wilfully, and intentionally combine, conspire, confederate and agree with other conspirators, both known and unknown, to commit the following offense against the United States, to wit: to knowingly and intentionally distribute and possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1); all in violation of 46 U.S.C. § 70506(b)

and 21 U.S.C. § 960(b)(3).

3. During the course and in furtherance of the conspiracy, the Defendant assisted a drug trafficking organization ("DTO") from in or about May 2008, and continuing until February 23, 2011, knowing that that DTO provided maritime transportation services to various cocaine traffickers who needed to move multi-ton quantities of cocaine from the Gulf of Uraba, on the northern coast of Colombia, through international waters to Panama, Honduras, and elsewhere.

4. During and in furtherance of the conspiracy, the Defendant was primarily responsible for obtaining and selling "asset reports" and/or navigational charts or maps to co-Defendant Hipolito Martinez-Gonzalez and his associates in the transportation organization. The Defendant further knew that the maps purportedly indicated where U.S., Colombian, and other countries' Coast Guard and Navy air and maritime assets were operating in the Caribbean Sea on a particular day. The Defendant knew that these maps were being used by the DTO to coordinate vessels which were being used to transport multi-ton quantities of cocaine from the northern coast of Colombia, through international waters, to Panama, Honduras, and elsewhere. The Defendant also knew that the organization used the asset reports to plan the best route to be taken by the cocaine-laden vessels so as to avoid detection by maritime and law enforcement authorities, thereby facilitating the transportation of large quantities of cocaine. During the course and in furtherance of the conspiracy, on approximately five occasions, the Defendant purchased the asset reports and maps from an individual he knew and then sold the reports and maps to the organization prior to cocaine transports. The Defendant was paid approximately $3,500 to $4,000 USD for each report by co-Defendant Hipolito Martinez-Gonzalez and typically provided Hipolito Martinez-Gonzalez or his associate with the reports or maps, often by e-mail

communications, within hours of the request. In addition, the Defendant on occasion assisted the DTO in learning, after the fact, whether and where vessel seizures had occurred in the Caribbean Sea and off the northern coast of Colombia so that the organization could determine which vessels were apprehended and which cocaine buyers or owners had to be notified of the loss of cocaine.

5. During the course and in furtherance of the conspiracy, the Defendant communicated with various members of the DTO via telephone and e-mail communications. Judicially-authorized intercepted telephone calls support the Defendant's assistance to his conspirators in obtaining the asset report and maps and providing post-seizure information. The evidence also supports that the Defendant e-mailed the asset reports and maps to his conspirators.

6. The Defendant further is aware that during the course of his involvement in the conspiracy, several cocaine-laden vessels coordinated by the DTO were seized or attempted to be seized by maritime or law enforcement authorities. For instance, the Defendant is aware that on or about March 3, 2010, the U.S. Coast Guard / Navy seized approximately 1,503 kilograms of cocaine from one of the DTO's go-fast vessels which had been located approximately 12 nautical miles north of Punta Grande, Panama. The Defendant acknowledges that the U.S. Coast Guard determined that the go-fast vessel possessed no visible flag or registration numbers, operated at night without navigation lights, and traveled through the high seas. The Defendant is also aware that the vessel's five crew members were arrested and that the master of the seized go-fast vessel was interviewed and admitted that the go-fast vessel was taking a load of cocaine to Honduras. The Defendant acknowledges that while the master of the go-fast vessel claimed Honduran registry for the vessel, the Government of Honduras failed to affirmatively and unequivocally

assert that the vessel was of Honduran nationality after being contacted by the United States Coast Guard. Based on his review of the evidence, the Defendant acknowledges that the seized vessel traveled through the high seas, is a "vessel without nationality," and is subject to the jurisdiction of the United States pursuant to 46 U.S.C. §§ 70502(c)(1)(A) and (d)(1)(C).

7.  The Defendant agrees venue lies with this Court.

8.  The Defendant also agrees that his participation as a conspirator in the above-described acts were in all respects knowing, intentional, and wilful, reflecting an intention and deliberation to do something the law forbids, and were not in any way the product of any accident, mistake of law or fact, duress, entrapment, or public authority.

//
//
//
//
//
//
//
//
//
//
//
//

## DEFENDANT'S ACKNOWLEDGMENT

I have reviewed a Spanish translation of this factual proffer and have discussed it with my attorney, Ron Earnest, Esq. I fully understand this factual proffer. I agree and acknowledge by my signature that this proffer of facts is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this factual proffer fully. This factual proffer has been translated into Spanish for me. I understand that the English version controls.

_Javier E. Juan B_                                    _8/ /13_
JAVIER EDUARDO JUAN BALLESTAS,          Date
a/k/a "El Mono"
Defendant


## ATTORNEY'S ACKNOWLEDGMENT

I have read this factual proffer, and have reviewed it fully with my client with the assistance of a federally court-certified English-Spanish interpreter.

_Ron Earnest_                                         _8/13/13_
Ron Earnest, Esq.                                   Date
Attorney for Defendant